# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF KENTUCKY
# LOUISVILLE DIVISION

*** Electronically Filed ***

| | |
|---|---|
| GREENCITY DEMO, LLC ) | |
| ) | Civil Action No. 3:19-cv-146-RGJ |
| **PLAINTIFF** ) | |
| vs. ) | Jury Trial Demanded |
| ) | |
| WOOD ENVIRONMENT & ) | |
| INFRASTRUCTURE SOLUTIONS, INC. ) | |
| f/k/a Amec Foster Wheeler Environment ) | |
| & Infrastructure, Inc. ) | |
| ) | |
| and ) | |
| ) | |
| JOHN WOOD GROUP, PLC ) | |
| ) | |
| and ) | |
| ) | |
| D.H. GRIFFIN WRECKING CO., INC. ) | |
| ) | |
| and ) | |
| ) | |
| THE WINTER CONSTRUCTION ) | |
| COMPANY ) | |
| ) | |
| **DEFENDANTS** ) | |

## FIRST AMENDED COMPLAINT

Plaintiff, GreenCity Demo, LLC ("GreenCity"), by and through counsel, for its Complaint against the Defendants, respectfully states as follows:

## PARTIES

1.   Plaintiff, GreenCity Demo, LLC, is a Kentucky limited liability Company, validly organized under the laws of the Commonwealth of Kentucky with its principal office located in Prospect, Kentucky.

1

2. Defendant, Wood Environment & Infrastructure Solutions, Inc. f/k/a Amec Foster Wheeler Environment & Infrastructure, Inc., is registered as a foreign corporation with the Kentucky Secretary of State, with its principal office listed as being located in Alpharetta, Georgia. Wood Environment & Infrastructure Solutions, Inc. f/k/a Amec Foster Wheeler Environment & Infrastructure, Inc., has a Kentucky registered agent for service of process, has physical office locations in Kentucky, and at all relevant times herein has regularly conducted business in the Commonwealth of Kentucky and in Jefferson County, Kentucky.

3. Defendant, John Wood Group, PLC, is a corporation, with its principal office being located in Scotland, UK. At all relevant times herein John Wood Group, PLC has conducted business in the Commonwealth of Kentucky and in Jefferson County, Kentucky. At all relevant times herein, John Wood Group, PLC has been a parent corporation of Defendant, Wood Environment & Infrastructure Solutions, Inc. f/k/a Amec Foster Wheeler Environment & Infrastructure, Inc. Hereinafter, Defendant, Wood Environment & Infrastructure Solutions, Inc. f/k/a Amec Foster Wheeler Environment & Infrastructure, Inc. and Defendant, John Wood Group, PLC, shall be collectively referred to as "Wood".

4. Defendant, D.H. Griffin Wrecking Co. Inc. ("Griffin"), is registered as a foreign corporation with the Kentucky Secretary of State, with its principal office listed as being located in Greensboro, North Carolina. Griffin has a Kentucky registered agent for service of process, and at all relevant times herein has conducted business in the Commonwealth of Kentucky and in Jefferson County, Kentucky.

5. Defendant, The Winter Construction Company ("Winter"), is registered as a foreign corporation with the Kentucky Secretary of State, with its principal office listed as being located in Atlanta, Georgia. Winter has a Kentucky registered agent for service of process, and at all relevant times herein has conducted business in the Commonwealth of Kentucky and in Jefferson County, Kentucky.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over this action under 28 U.S.C. § 1332 because this action is between corporations and companies that are citizens of different states and the amount in controversy exceeds $75,000.00, exclusive of interests and costs.

7. Venue is proper in this Court, pursuant to 28 U.S.C. § 1391(b)(2), because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

## FACTUAL ALLEGATIONS

8. In 2016, LG&E-KU Services Company, or one of its related entities ("LG&E"), retained the services of Wood to prepare a *limited* NESHAPs asbestos and other regulated materials survey related to the upcoming demolition of the Powerhouse and associated annex and office building at LG&E's Cane Run Generating Station located at 5252 Cane Run Road, Louisville, Kentucky 40204 (the "Demolition").

9. Wood's role in the Demolition was to oversee that the Demolition was performed to specifications that Wood had prepared for LG&E, as well as ensuring all work was performed in compliance with all local, state and federal laws. Wood also served as a consultant to advise LG&E on selecting a General Contractor ("GC") for the Demolition.

10. Brandenburg Industrial Service Company, an Illinois corporation ("Brandenburg"), and Griffin both submitted competing bids to LG&E for the GC position related to the Demolition.

11. In preparation of their respective competing bids to become the GC of the Demolition, Brandenburg and Griffin each solicited bids from various contractors for the asbestos abatement portion of the Demolition (the "Abatement").

12. In the spring of 2017, Griffin specifically reached out and contacted GreenCity and requested that GreenCity bid on the Abatement.

13. Prior to Griffin contacting GreenCity about the Abatement, GreenCity had no knowledge of the Demolition project.

14. When GreenCity was specifically requested by Griffin to submit a bid for the Abatement, Griffin made GreenCity an offer, to wit: In consideration of GreenCity providing the lowest and most competitive bid for the Abatement which met all of the specifications for the Demolition, GreenCity was expressly promised by Griffin that if Griffin was ultimately awarded the GC position, that GreenCity would be awarded the Abatement portion of the Demolition. Griffin solidified said promise by stating to GreenCity that "We are the type of company that if we take you to the dance, we are taking you home."

15. GreenCity agreed and accepted Griffin's offer and expended substantial resources and indeed submitted the lowest and most competitive offer for the Abatement to Griffin.

16. GreenCity submitted bids to both Brandenburg and Griffin for the Abatement portion of the Demolition.

4

17. GreenCity was specifically informed by Griffin that the Abatement was required to be performed and completed in less than one year's time from the date the Abatement work began.

18. GreenCity's May 8, 2017 bid to Griffin for the Abatement amounted to eleven million, seventy seven thousand, nine hundred thirty seven dollars and thirty five cents ($11,077,937.35).

19. Winter also submitted a bid to Griffin for the Abatement but said bid was not competitive to GreenCity's bid and was for a substantially higher sum of money.

20. In mid-2017, Griffin was ultimately awarded the GC position of the Demolition by LG&E and was selected for said position by LG&E over Brandenburg.

21. GreenCity was informed by Griffin that the amount of money contained in Griffin's winning bid to LG&E to become the GC incorporated GreenCity's more competitive Abatement proposal into its winning bid with LG&E, which was substantially less than Winter's Abatement proposal.

22. When Griffin was awarded the GC position of the Demolition, Griffin and GreenCity had a binding contract for GreenCity to perform the Abatement.

23. GreenCity incurred approximately twenty thousand dollars ($20,000.00) in costs related to preparing its Abatement proposal.

24. GreenCity expected to realize a profit of approximately 40% to 50% of the amount of its Abatement proposal due to the fact that the Demolition was to be performed locally by GreenCity, and GreenCity could maximize its profits due to the proximity of the Demolition related to GreenCity's local contacts, labor, materials, equipment and its principal office being located in the same proximity.

25. Wood unethically, improperly, maliciously, intentionally and in bad faith interfered in the Demolition bidding and GC selection process by informing Griffin that although Griffin had been awarded the GC position by LG&E <u>that Griffin was required to use Winter for the Abatement over GreenCity</u>.

26. Thereafter, Griffin falsely represented to GreenCity that although Griffin had been awarded the GC position, that "*LG&E*" had instructed Griffin that it had to use Winter for the Abatement, and that GreenCity would not get the job. GreenCity was provided no explanation other than the above as to exactly <u>why</u> "*LG&E*" had made such an instruction, or why Winter would be performing the Abatement versus GreenCity.

27. Griffin later informed GreenCity that it was <u>not</u> "*LG&E*" who instructed Griffin that it could not use GreenCity for the Abatement, as Griffin had originally falsely represented to GreenCity, but that it was actually <u>Wood</u> that had inexplicably intervened and ordered Griffin that it must use Winter without any other explanation.

## Count I

### Breach of Contract (Against Griffin)

28. Paragraphs 1-27 above are incorporated herein by reference as if repeated herein.

29. Griffin promised and contracted with GreenCity that if Griffin was ultimately awarded the GC position, and GreenCity's Abatement proposal was the lowest and most competitive Abatement proposal it received, that GreenCity would be awarded the Abatement portion of the Demolition. GreenCity agreed to said terms.

30. GreenCity's Abatement proposal was the lowest and most competitive bid that Griffin received related to the Abatement.

6

31. Griffin was awarded the GC position.

32. A contract became enforceable between GreenCity and Griffin for the Abatement when Griffin was awarded the GC position for the Demolition.

33. Griffin breached the contract with GreenCity when it refused in bad faith, and without justification, to honor the contract with GreenCity, and retained Winter in place of GreenCity to perform the Abatement.

34. No justification or privilege excuses Griffin's conduct described herein.

35. GreenCity has been damaged by Griffin's breach of contract and is entitled to be awarded damages therefore.

## Count II

### Tortious Interference With Contract (Against Wood)

36. Paragraphs 1-35 above are incorporated herein by reference as if repeated herein.

37. Griffin contracted with GreenCity that if Griffin was ultimately awarded the GC position, and GreenCity's Abatement proposal was the lowest and most competitive Abatement proposal it received, that GreenCity would be awarded the Abatement portion of the Demolition. GreenCity agreed to said terms.

38. GreenCity's Abatement proposal was the lowest and most competitive bid that Griffin received related to the Abatement.

39. Griffin was awarded the GC position.

40. A contract became enforceable between GreenCity and Griffin for the Abatement when Griffin was awarded the GC position for the Demolition.

41. After the contract became enforceable between GreenCity and Griffin for GreenCity to perform the Abatement work, Wood unethically, improperly, maliciously, intentionally interfered in said contract and proximately and directly caused Griffin to breach said contract and retain Winter over GreenCity for the Abatement.

42. No justification or privilege excuses Woods' conduct described herein.

43. Wood's conduct described herein was unethical, fraudulent, wanton, willful and oppressive and/or was made in bad faith and/or with malice towards GreenCity.

44. GreenCity has been damaged by the actions of Wood described above and is entitled to be awarded damages therefore, including the imposition of substantial punitive damages.

## Count III

### Tortious Interference With Prospective Business Advantage (Against Wood)

45. Paragraphs 1-44 above are incorporated herein by reference as if repeated herein.

46. GreenCity had a valid business relationship and/or expected business advantage with Griffin due to the fact that Griffin specifically reach out and contacted GreenCity and contracted with GreenCity that if Griffin was ultimately awarded the GC position, and GreenCity's Abatement proposal was the lowest and most competitive Abatement proposal it received (which it was), that GreenCity was to be awarded the Abatement portion of the Demolition by Griffin, and GreenCity agreed to said terms.

47. Wood had express knowledge of the valid business relationship and/or expected business advantage GreenCity had with Griffin, due to the fact that Wood

8

explicitly informed Griffin that it <u>could not use GreenCity</u> for the Abatement and instead had to use Winter.

48. Wood unethically, improperly, maliciously, and intentionally interfered in the valid business relationship and/or expected business advantage GreenCity had with Griffin.

49. Wood had no justification, no authority, and possessed an improper motive in interfering in the valid business relationship and/or expected business advantage GreenCity had with Griffin.

50. Wood and Winter, and/or their agents and representatives thereof, both improperly benefitted by Wood's improper interference in the valid business relationship and/or expected business advantage GreenCity had with Griffin.

51. No justification or privilege excuses Woods' conduct described herein.

52. Wood's unethical, improper, malicious and intentional interference into the valid business relationship and/or expected business advantage GreenCity had with Griffin caused GreenCity significant damages.

53. Wood's conduct described herein was unethical, fraudulent, wanton, willful and oppressive and/or was made in bad faith and/or with malice towards GreenCity.

54. GreenCity has been damaged by the actions of Wood described above and is entitled to be awarded damages therefore, including the imposition of substantial punitive damages.

## Count IV

### Promissory Estoppel (Against Griffin)

55. Paragraphs 1-54 above are incorporated herein by reference as if repeated herein.

56. Griffin made a clear promise to GreenCity that if Griffin was ultimately awarded the GC position, and GreenCity's Abatement proposal was the lowest and most competitive Abatement proposal it received (which it was), that GreenCity was to be awarded the Abatement portion of the Demolition by Griffin.

57. Griffin reasonably expected to induce GreenCity into action and expend its time and resources and provide Griffin with the lowest and most competitive Abatement proposal in reliance of Griffin's promise above.

58. GreenCity was induced into action due to Griffin's promise, and reasonably relied on Griffin's promise and representations, and provided Griffin with the lowest and most competitive Abatement proposal.

59. GreenCity reasonably relied on Griffin's promise and representations to its own detriment when Griffin reneged and refused to honor its promise and representations.

60. GreenCity expended considerable sums of money in preparing its Abatement proposal to Griffin, and lost considerable expected profits when Griffin reneged and refused to honor its promise and representations.

61. GreenCity has been damaged by the actions of Wood described above and is entitled to be awarded damages therefore.

## Count V

### Civil Conspiracy (Against Wood and Winter)

62. Paragraphs 1-61 above are incorporated herein by reference as if repeated herein.

63. Wood and Winter conspired with each other to commit tortious actions and fraud against GreenCity in order to benefit themselves, and/or their agents and representatives, by committing unethical, fraudulent, wanton, willful and oppressive improper actions to deprive GreenCity of the Abatement.

64. Wood's and Winter's actions described herein amounted to a corrupt or unlawful combination or agreement between two or more persons to do by concert of action an unlawful act, or to do a lawful act by unlawful means.

65. Wood and Winter acted in concert with each other pursuant to a common design and scheme and each gave substantial assistance to the other in accomplishing a conspiracy to award the Abatement to Winter, in spite of GreenCity's contractual and other rights.

66. GreenCity has been damaged by the actions of Wood and Winter described above and is entitled to be awarded damages therefore, including the imposition of substantial punitive damages.

## Count VI

### Fraud, Misrepresentations and Material Omissions

### (Against Wood, Winter and Griffin)

67. Paragraphs 1-66 above are incorporated herein by reference as if repeated herein.

68. Wood and Winter committed fraud on GreenCity by conspiring with each other and taking the intentional and malicious actions described throughout herein to prevent GreenCity from being awarded the Abatement in order to benefit themselves, and/or their agents.

69. Griffin committed fraud on GreenCity by acquiescing to Wood's and Winter's actions described above with full knowledge that it was violating the rights of GreenCity.

70. Griffin made material misrepresentations to GreenCity, as well as material omissions to GreenCity, by initially informing GreenCity that it was *"LG&E"* who had instructed Griffin that Winter must be used for the Abatement versus GreenCity, when in fact it was Wood who had unethically, improperly, maliciously and intentionally interfered in causing GreenCity to not be awarded the Abatement.

**WHEREFORE,** Plaintiff, GreenCity Demo, LLC, respectfully demands, as follows:

1. A trial by jury;
2. Compensatory and punitive damages to be determined by the trier of fact;
3. Pre-judgment and post-judgment interest on all sums awarded as allowable at the maximum rate permitted by law;
4. Attorney fees, costs and expenses as permitted by law;
5. Leave to amend this Complaint to add parties and/or claims as the evidence may warrant; and
6. Any and all such other and further equitable relief or otherwise to which Plaintiff may be entitled.

Respectfully submitted,

*/s/ James D. Ballinger*_____
James D. Ballinger
**BALLINGER LAW, PLLC**
3610 Lexington Road
Louisville, KY  40207
(502) 426-3215
jim@kentuckytrial.com
*Counsel for Plaintiff, GreenCity Demo, LLC*

13