UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:19-CV-146-RGJ

GREENCITY DEMO, LLC                                                                                  Plaintiff

v.

WOOD ENVIRONMENT &                                                                             Defendants
INFRASTRUCTURE SOLUTIONS,
INC., ET AL.

\* \* \* \* \*

## MEMORANDUM OPINION AND ORDER

Defendant D.H. Griffin Wrecking Co., Inc. ("Griffin") and Defendant Winter Construction Company ("Winter") both move to dismiss Plaintiff GreenCity Demo's ("GreenCity") First Amended Complaint [DE 19], and GreenCity moves for leave to file its Second Amended Complaint. [DE 23; DE 24; DE 29]. Counsel for GreenCity also moves to withdraw from the case. [DE 35]. Briefing is complete and the matter is ripe. [DE 27; DE 28; DE 31; DE 32; DE 34]. For the reasons below, Griffin's Motion to Dismiss is **DENIED AS MOOT**, Winter's Motion to Dismiss is **DENIED AS MOOT**, GreenCity's Motion for Leave is **GRANTED**, and Counsel's Motion to Withdraw is **GRANTED**.

### I.   BACKGROUND

In 2016, LG&E-KU Services Company ("LG&E") hired Wood Environment & Infrastructure Solutions Inc. ("Wood") to oversee the demolition of an LG&E powerplant and to help LG&E select a general contractor for the project. [DE 29-2 at 190]. Griffin, a general contractor, wanted the job. *Id.* at 191. Before it applied, it contacted GreenCity, a subcontractor, and asked GreenCity to submit a bid for the abatement portion of the demolition. *Id.* GreenCity alleges that Griffin did much more than just request a bid:

1

> In consideration of GreenCity providing the lowest and most competitive bid for the Abatement which met all of the specifications for the Demolition, GreenCity was expressly promised by Griffin that if Griffin was ultimately awarded the GC position, that GreenCity would be awarded the Abatement portion of the Demolition. Griffin solidified said promise by stating to GreenCity that 'We are the type of company that if we take you to the dance, we are taking you home.'

*Id.*

GreenCity accepted Griffin's offer and "expended substantial resources and indeed submitted the lowest and most competitive bid for the Abatement to Griffin." *Id.* Winter, another subcontractor, also submitted a bid to Griffin, but its bid was higher than and not competitive with GreenCity's. *Id.* at 192.

LG&E hired Griffin as the general contractor. *Id.* Subsequently, Griffin informed GreenCity "that the amount of money contained in Griffin's winning bid to LG&E to become the GC incorporated GreenCity's more competitive Abatement bid into its winning bid with LG&E." *Id.* Although Griffin and GreenCity allegedly had an oral contract, Wood "ordered and directed" Griffin "to use Winter for the Abatement over GreenCity." *Id.* at 193.

GreenCity filed this action against Griffin, Winter, and Wood (collectively, the "Defendants"). [DE 1]. In its Complaint, GreenCity asserted six counts: breach of contract against Griffin (Count 1); tortious interference with a contract against Wood (Count 2); tortious interference with a prospective business advantage against Wood (Count 3); promissory estoppel against Griffin (Count 4); civil conspiracy against Wood and Winter (Count 5); and fraud, misrepresentations, and material omissions against Griffin, Wood, and Winter (Count 6). *Id.* at 6-12. Griffin and Wood answered [DE 7; DE 8], and GreenCity filed its First Amended Complaint [DE 19]. Griffin and Winter then moved to dismiss the First Amended Complaint [DE 23; 24]. GreenCity responded and moved for leave to amend. [DE 27; DE 28; DE 29]. Griffin objected to amendment, arguing that it is futile. [DE 32].

## II.     STANDARD

Federal Rule 15 provides that "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). "In deciding whether to grant a motion to amend, courts should consider undue delay in filing, lack of notice to the opposing party, bad faith by the moving party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility of amendment." *Brumbalough v. Camelot Care Centers, Inc.*, 427 F.3d 996, 1001 (6th Cir. 2005) (citing *Coe v. Bell*, 161 F.3d 320, 341-42 (6th Cir. 1998). "The grant or denial of leave to amend is within the discretion of the trial court, and review is for abuse of discretion." *Sec. Ins. Co. of Hartford v. Kevin Tucker & Assocs., Inc.*, 64 F.3d 1001, 1008 (6th Cir. 1995) (citing *Roth Steel Prods. v. Sharon Steel Corp.*, 705 F.2d 134, 155 (6th Cir. 1983).

"When there are pending before the court both a dispositive motion and a motion to amend the complaint, the court must first address the motion to amend complaint." *Gallaher & Assocs., Inc. v. Emerald TC, LLC*, No. 3:08-CV-459, 2010 WL 670078, at *1 (E.D. Tenn. Feb. 19, 2010) (citing *Ellison v. Ford Motor Co.,* 847 F.2d 297, 300 (6th Cir.1988)). If the court grants a motion to amend, "the original pleading no longer performs any function in the case." *Clark v. Johnston*, 413 Fed. App'x 804, 811 (6th Cir. 2011) (internal quotation marks and citation omitted). Thus, "when the court grants leave to amend the complaint, a motion to dismiss the original complaint will be denied as moot if the amended complaint adequately addresses the grounds for dismissal." *Stepp v. Alibaba.com, Inc.*, No. 3:16-CV-00389-CRS, 2016 WL 5844097, at *2 (W.D. Ky. Oct. 4, 2016).

### III.     DISCUSSION

GreenCity moves for leave to file its Second Amended Complaint. [DE 29]. In its Second Amended Complaint, GreenCity: 1) corrects a typographical error by changing the second occurrence of the word "offer" in ¶ 15 to "bid"; 2) removes the fraud claims against both Griffin and Winter; 3) provides "new information and clarifies the allegations and claims that GreenCity has asserted against the Defendants"; and 4) adds claims for tortious interference with contract, tortious interference with prospective business advantage, and unjust enrichment against Winter. [DE 29 at 184-185]. Griffin responded, objecting to amendment; Winter did not. [DE 32].

Griffin argues that GreenCity's motion for leave to amend is futile. [DE 32 at 213]. But Griffin does not argue undue delay, bad faith, or dilatory motive, and the Court finds no evidence of those factors. *See Brumbalough*, 427 F.3d at 1001. Thus, in ruling on GreenCity's motion for leave to amend, the Court's analysis will be limited to whether amendment of the claims against Griffin and Winter is futile. Because the standard for futility mirrors the review applied in motions to dismiss, the Court will address GreenCity's amended allegations as if included in GreenCity's First Amended Complaint. *See Saunders v. Ford Motor Co.*, No. 3:14-CV-00594-JHM, 2015 WL 1980215, at *4 (W.D. Ky. May 1, 2015) (addressing plaintiff's amended allegations as if included in first complaint); *Midkiff v. Adams Cnty. Reg'l Water Dist.,* 409 F.3d 758, 767 (6th Cir.2005) (quoting *Martin v. Associated Truck Lines, Inc.*, 801 F.2d 246, 249 (6th Cir.1986)) ("A motion for leave to amend may be denied for futility 'if the court concludes that the pleading as amended could not withstand a motion to dismiss'").

#### A.  Claims Against Griffin

In its Second Amended Complaint, GreenCity asserts breach of contract (Count 1) and promissory estoppel (Count 4) against Griffin. [DE 29-2].

*1. Breach of Contract*

To state a claim for breach of contract, a plaintiff must allege: 1) the existence of a contract; 2) the breach of that contract; 3) damages flowing from the breach. *Metro Louisville/Jefferson Cty. Gov't v. Abma*, 326 S.W.3d 1, 8 (Ky. App. 2009) (citing *Barnett v. Mercy Health Partners-Lourdes, Inc.*, 233 S.W.3d 723, 727 (Ky. App. 2007)).

Griffin argues that "Plaintiff's contention that there was an enforceable contract between it and Griffin has been rejected by multiple courts in multiple jurisdictions and most importantly by the Kentucky Supreme Court" in *Finney Co. v. Monarch Const. Co.*, 670 S.W.2d 857, 860 (Ky. 1984). [DE 23-1 at 130]. In *Finney*, the Kentucky Supreme Court held:

> A subcontractor bidder merely makes an offer that is converted into a contract by a regularly communicated acceptance conveyed to him by the general contractor. No contractual relationship is created between the subcontractor and the general contractor even though the bid is used as a part of the general over-all bid by the general contractor and accepted by the awarding authority.

*Finney*, 670 S.W.2d at 860 (quoting *Klose v. Sequoia Union High Sch. District*, 11 Cal.App.2d 636, 258 P.2d 517-518 (1953) (internal quotation marks omitted)).

Griffin asserts that, based on *Finney*, GreenCity's "presentation of a bid to Griffin did not create a binding contract for which Griffin can now be liable. If there is no contract, then there can be no claim for breach of contract." [DE 23-1 at 131].

GreenCity rejects Griffin's characterization of its allegations and argues that, based on the true allegations, *Finney* is inapplicable. [DE 27 at 173 ("[T]his is not a situation where GreenCity filed suit just because its bid was used by Griffin. There was a very specific agreement struck between the parties prior to GreenCity ever performing one act. *Very specific promises* were made to GreenCity to entice GreenCity to accept the offer") (emphasis in original)].

The *Finney* court suggested that there were possible exceptions to the general rule that a bid does not create a contract, such as "a series of communications between the parties which indicated an acceptance or agreement" or "reliance by the subcontractor upon the contractor." *Finney*, 670 S.W.2d at 860. GreenCity has alleged "a series of communications . . . which indicated acceptance or agreement" (i.e., the existence of a contract), breach, and damages:

> 29. GreenCity had no prior knowledge of the Demolition or the Abatement associated therewith prior to Griffin specifically contacting GreenCity with an offer.
>
> 30. Griffin made a verbal offer to GreenCity requesting GreenCity to bid on the Abatement, and if Griffin was ultimately awarded the GC position, and GreenCity's Abatement bid was the lowest and most competitive Abatement bid Griffin received, that GreenCity would be awarded the Abatement portion of the Demolition.
>
> 31. GreenCity accepted Griffin's offer and a contract was formed (the "Contract").
>
> 32. GreenCity's performed its obligations under the Contract and GreenCity's Abatement bid was the lowest and most competitive bid that Griffin received related to the Abatement.
>
> 33. Griffin was awarded the GC position.
>
> 34. The Contract became enforceable between GreenCity and Griffin related to the Abatement when Griffin's Abatement bid was the lowest and most competitive Griffin had received and Griffin was awarded the GC position for the Demolition.
>
> 35. Griffin breached the Contract with GreenCity when it refused in bad faith, and without justification, to perform its obligations under the Contract with GreenCity, and retained Winter in place of GreenCity to perform the Abatement.
>
> 36. No justification or privilege excuses Griffin's breach of the Contract.
>
> 37. GreenCity is in possession of a recorded phone conversation which confirmed the existence of the Contract.
>
> 38. GreenCity has been damaged by Griffin's breach of the Contract and is entitled to be awarded damages therefore.

[DE 29-2 at 193-194].

GreenCity has pled factual allegations supporting the essential elements of a breach of contract claim. The facts, as pled, allow the Court to draw a reasonable inference that Griffin breached its contractual obligation and is therefore liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). As a result, the Court finds that amendment is not futile, grants GreenCity's motion for leave to amend as to this claim, and denies as moot Griffin's motion to dismiss.

### 2. *Promissory Estoppel*

To state a claim for promissory estoppel, plaintiff must allege: 1) a promise, usually oral; 2) the promisor reasonably expects to induce action or inaction; 3) the promisee reasonably relies on the promise as evidenced by either an act or a forbearance; and 4) justice achieved only by enforcement of the oral promise. *Brewer v. Branch Banking & Tr. Corp.,* No. 3:04 CV 573-H, 2005 WL 2100995, at *2 (W.D. Ky. Aug. 26, 2005) (citations omitted).

Griffin's first argues that the Court must dismiss this claim because GreenCity cannot plead both breach of contract and promissory estoppel. [DE 23-1 at 133-134 ("As there was no valid contract between Griffin and Plaintiff, allowing Plaintiff to then proceed under a promissory estoppel theory for the same alleged wrong goes against Kentucky jurisprudence regarding the limited application of that doctrine"). Plaintiff argues that it can. [DE 27 at 175 ("[P]romissory estoppel is an available cause of action in the facts as alleged herein")].

Under Kentucky law, promissory estoppel "cannot be the basis for a claim if it represents the same performance contemplated under a written contract." *Derby City Capital, LLC v. Trinity HR Servs.*, 949 F. Supp. 2d 712, 729 (W.D. Ky. 2013) (internal quotation marks and citation omitted). But, here, the parties did not execute a written contract and Griffin contests the existence of an oral one. [DE 23-1 at 133-134 ("[T]here was no valid contract between Griffin and

7

Plaintiff"). Because Griffin disputes a contract exists, GreenCity can plead promissory estoppel. *See N. Atl. Operating Co., Inc. v. ZZSS, LLC*, No. 3:17-CV-00214-CRS, 2018 WL 1411266, at *4 (W.D. Ky. Mar. 21, 2018) ("[T]he validity of the settlement agreement between the parties has not yet been determined. Thus, plaintiffs are permitted to plead promissory estoppel as an alternative to breach of contract. Plaintiffs have alleged sufficient facts to support their claim for promissory estoppel"); Fed. R. Civ. P. 8(d)(3) ("A party may state as many separate claims or defenses as it has, regardless of consistency").

Griffin next argues that GreenCity has not sufficiently alleged the elements of promissory estoppel because "there was no reasonable basis for Plaintiff to conclude that it could possibly have an enforceable promise from Griffin." [DE 23-1 at 135 ("The overwhelming amount of case law to the contrary shows that Plaintiff's reliance on an alleged oral promise by Griffin was not reasonable. The Kentucky Supreme Court has clearly stated that a general contractor owes no duty to a subcontractor when that general contractor uses the subcontractor's bid")]. GreenCity argues that its reliance was reasonable because under Kentucky law promissory estoppel is properly pled when a subcontractor detrimentally relies on a general contractor. [DE 27 at 175]. In support of this proposition, GreenCity cites three cases: *Meade Const. Co. v. Mansfield Commercial Elec., Inc.,* Ky. 579 S.W.2d 105 (1979), *Harry Harris, Inc. v. Quality Const. Co. of Benton, Ky.,* Ky.App., 593 S.W.2d 872 (1979), and *Lichtefeld-Massaro, Inc. v. R.J. Manteuffel Co.*, 806 S.W.2d 42 (Ky. Ct. App. 1991). Yet, in those cases, general contractors could assert promissory estoppel claims against subcontractors but not—as GreenCity would have it—the other way around. *See Meade,* 579 S.W.2d at 106 ("[A subcontractor] who submits . . . a bid for a contract should be bound, when the contract is awarded pursuant to a bid prepared in reasonably foreseeable reliance on that quotation, to accept an agreement in conformity with the quotation"); *Harry Harris,* 593

8

S.W.2d at 874 ("[S]ubcontractor was bound by its offer to the general contractor when the general accepted the offer, used it in arriving at the total bid package, and bound itself to perform the total contract"); *Lichtefeld-Massaro*, 806 S.W.2d at 44 ("[W]hen, for some reason, a subcontractor, in submitting his bid, comes within the precepts of the promissory estoppel rule . . . he may be bound to performance or suffer damages for breach"). GreenCity's misreading of those cases, however, is not fatal to its promissory estoppel claim because here, unlike there, the subcontractor-plaintiff has alleged that it detrimentally relied on an explicit promise from the contractor-defendant. Because those cases are distinguishable, they do not bar GreenCity's promissory estoppel claim, which it has sufficiently pled by alleging that:

> 58. Griffin made a clear promise and offer to GreenCity that if Griffin was ultimately awarded the GC position, and GreenCity's Abatement bid was the lowest and most competitive Abatement bid it received (which it was), that GreenCity was to be awarded the Abatement portion of the Demolition by Griffin.
>
> 59. Griffin reasonably expected to induce GreenCity into action and expend its time and resources and provide Griffin with the lowest and most competitive Abatement bid in reliance of Griffin's promise above.
>
> 60. GreenCity reasonably relied upon Griffin's promise and representations, and provided Griffin with the lowest and most competitive Abatement bid.
>
> 61. GreenCity reasonably relied on Griffin's promise and representations to its own detriment when Griffin reneged and refused to honor its promise and representations.
>
> 62. Justice may be achieved only by enforcement of the promise Griffin made to GreenCity as described herein so as to ensure that GreenCity is awarded damages representing the benefits it expected to obtain as a result of Griffin's promise and representations.
>
> 63. GreenCity has been damaged by the actions of Wood described above and is entitled to be awarded damages therefore.

[DE 29-2 at 197-198].

As a result, the Court finds that amendment is not futile, grants GreenCity's motion for leave to amend as to this claim and denies as moot Griffin's motion to dismiss.

**2. Claims against Winter**

In the Second Amended Complaint, GreenCity dismisses the fraud claim against Winter, but adds claims against Winter for tortious interference with a contract, tortious interference with prospective business advantage, and unjust enrichment. [DE 29 at 184-185]. Winter argues that the claims against it in the First Amended Complaint must be dismissed because GreenCity failed to: 1) plead its fraud claim with particularity; 2) its civil conspiracy claim with specificity; and 3) base its civil conspiracy claim on a viable underlying tort claim. [DE 24-1 at 148]. As noted above, Winter did not respond to GreenCity's motion for leave to amend. That said, because the Court cannot grant GreenCity's motion for leave to amend if doing so is futile, the Court will consider whether GreenCity's claims against Winter could withstand a motion to dismiss. *See Midkiff*, 409 F.3d at 767 (6th Cir.2005).

*1. Civil Conspiracy*

A claim for civil conspiracy requires "a corrupt or unlawful combination or agreement between two or more persons to do by concert of action an unlawful act, or to do a lawful act by unlawful means." *Peoples Bank of N. Ky., Inc. v. Crowe Chizek & Co. LLC,* 277 S.W.3d 255, 261 (Ky.Ct.App.2008) (quoting *Smith v. Bd. of Educ. Of Ludlow,* 94 S.W.2d 321, 325 (Ky.1936)) (internal quotation marks omitted). "[T]he elements of a civil conspiracy are: 1) an agreement or combination, 2) that is unlawful or corrupt, 3) entered into by two or more persons, 4) for the purpose of accomplishing an unlawful goal." *Brown v. Student Loan Xpress, Inc.*, No. 5:11-CV-00090-TBR, 2012 WL 1029467, at *9 (W.D. Ky. Mar. 26, 2012).

Winter argues that "GreenCity fails to plead a civil conspiracy claim against Winter because its amended complaint states conclusory allegations without supporting facts." [DE 24-1 at 154]. GreenCity agrees with Winter as to its First Amended Complaint, but argues that its Second Amended Complaint "cures defects Winter identified in its Motion to Dismiss." [DE 28 at 181]. In the Second Amended Complaint, Griffin alleges:

> 65. Wood and Winter conspired with each other to intentionally and tortuously interfere in the Contract between Griffin and GreenCity, and/or tortiously interfere with the valid business relationship and/or expected business advantage GreenCity had with Griffin, by taking intentional and malicious steps to ensure that Griffin was ordered to make sure that Griffin awarded the Abatement to Winter despite their knowledge of the Contract and/or valid business relationship and/or expected business advantage GreenCity had with Griffin.
>
> 66. Wood's and Winter's tortious actions described above against GreenCity were taken in order to benefit themselves, and/or their agents and representatives, by committing unethical, fraudulent, wanton, willful and oppressive improper actions to deprive GreenCity of the Abatement, and ultimately making sure that Griffin was ordered and directed to award the Abatement to Winter, despite Wood and Winter both having knowledge of the Contract and/or valid business relationship and/or expected business advantage GreenCity had with Griffin.
>
> 67. Wood's and Winter's actions described herein amounted to a corrupt or unlawful combination or agreement between two or more persons to do by concert of action an unlawful act, or to do a lawful act by unlawful means.
>
> 68. Wood and Winter acted in concert with each other pursuant to a common design and scheme and each gave substantial assistance to the other in accomplishing a conspiracy to award the Abatement to Winter, despite their knowledge of GreenCity's contractual rights and/or the valid business relationship and/or expected business advantage GreenCity had with Griffin.
>
> 69. GreenCity has been damaged by the actions of Wood and Winter described above and is entitled to be awarded damages therefore, including compensatory and punitive damages.

[DE 29-2 at 198-199].

Considering GreenCity's factual allegations as true, which the Court must do at this stage of litigation, the Court finds that GreenCity has provided enough allegations to "nudge[] [its]

11

claim[] across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. GreenCity's allegations may be insufficient after discovery. But, at this stage of litigation, GreenCity has alleged just enough for its civil conspiracy to survive. As a result, the Court finds that amendment is not futile, grants GreenCity's motion for leave to amend as to this claim and denies as moot Winter's motion to dismiss.

### 2. Remaining Claims

The remaining claims against Winter in the GreenCity's Second Amended Complaint are tortious interference with a contract, tortious interference with a prospective economic advantage, and unjust enrichment. Winter did not object to the Second Amended Complaint, and its arguments in its motion to dismiss do no cover the new claims. The Court declines to make Winter's arguments for it. *See Stransky v. Cummins Engine Co.*, 51 F.3d 1329, 1335 (7th Cir. 1995) ("The federal courts will not invent legal arguments for litigants").

Because Rule 15 mandates that leave should be freely given, the Court chooses to exercise its discretion to grant GreenCity leave to amend. The Court finds no evidence of undue delay, bad faith, or dilatory motive. Based on a cursory review of the new claims against Winter, the Court finds that GreenCity's Second Amended Complaint provides "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *See Flinn v. R.M.D. Corp.*, No. 3:11-CV-00386-H, 2012 WL 694037, at *2 (W.D. Ky. Mar. 1, 2012) ("Before leave may be granted . . . the Court must conduct a cursory review of the newly presented allegations and issues") (citing *Crawford v. Roane*, 53 F.3d 750, 753 (6th Cir.1995). Thus, the Court finds that amendment is not futile, grants GreenCity's motion for leave to amend as to these claims and denies as moot Winter's motion to dismiss.

## IV. CONCLUSION

For the reasons above, and being otherwise sufficiently advised, **THE COURT ORDERS AS FOLLOWS**:

(1) Griffin's Motion to Dismiss is **DENIED AS MOOT** [DE 23];

(2) Winter's Motion is to Dismiss is **DENIED AS MOOT** [DE 24];

(3) GreenCity's Motion For Leave to Amend is **GRANTED** [DE 29];

(4) Counsel's Motion to Withdraw is **GRANTED** [DE 35].

(5) GreenCity shall hire new counsel.

(6) GreenCity's new counsel shall enter his or her appearance within forty-five (45) days of this Order.

Copies to:     Counsel of record