# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF KENTUCKY
# LOUISVILLE DIVISION

*** Electronically Filed ***

| | |
|---|---|
| GREENCITY DEMO, LLC ) | |
| ) | Civil Action No. 3:19-cv-146-RGJ |
| **PLAINTIFF** ) | |
| vs. ) | Jury Trial Demanded |
| ) | |
| WOOD ENVIRONMENT & ) | |
| INFRASTRUCTURE SOLUTIONS, INC. ) | |
| f/k/a Amec Foster Wheeler Environment ) | |
| & Infrastructure, Inc. ) | |
| ) | |
| and ) | |
| ) | |
| JOHN WOOD GROUP, PLC ) | |
| ) | |
| and ) | |
| ) | |
| D.H. GRIFFIN WRECKING CO., INC. ) | |
| ) | |
| and ) | |
| ) | |
| THE WINTER CONSTRUCTION ) | |
| COMPANY ) | |
| ) | |
| **DEFENDANTS** ) | |

## SECOND AMENDED COMPLAINT

Plaintiff, GreenCity Demo, LLC ("GreenCity"), by and through counsel, for its Second Complaint against the Defendants, respectfully states as follows:

## PARTIES

1.  Plaintiff, GreenCity Demo, LLC, is a Kentucky limited liability Company, validly organized under the laws of the Commonwealth of Kentucky with its principal office located in Prospect, Kentucky.

1

2. Defendant, Wood Environment & Infrastructure Solutions, Inc. f/k/a Amec Foster Wheeler Environment & Infrastructure, Inc., is registered as a foreign corporation with the Kentucky Secretary of State, with its principal office listed as being located in Alpharetta, Georgia. Wood Environment & Infrastructure Solutions, Inc. f/k/a Amec Foster Wheeler Environment & Infrastructure, Inc., has a Kentucky registered agent for service of process, has physical office locations in Kentucky, and at all relevant times herein has regularly conducted business in the Commonwealth of Kentucky and in Jefferson County, Kentucky.

3. Defendant, John Wood Group, PLC, is a corporation, with its principal office being located in Scotland, UK. At all relevant times herein John Wood Group, PLC has conducted business in the Commonwealth of Kentucky and in Jefferson County, Kentucky. At all relevant times herein, John Wood Group, PLC has been a parent corporation of Defendant, Wood Environment & Infrastructure Solutions, Inc. f/k/a Amec Foster Wheeler Environment & Infrastructure, Inc. Hereinafter, Defendant, Wood Environment & Infrastructure Solutions, Inc. f/k/a Amec Foster Wheeler Environment & Infrastructure, Inc. and Defendant, John Wood Group, PLC, shall be collectively referred to as "Wood".

4. Defendant, D.H. Griffin Wrecking Co. Inc. ("Griffin"), is registered as a foreign corporation with the Kentucky Secretary of State, with its principal office listed as being located in Greensboro, North Carolina. Griffin has a Kentucky registered agent for service of process, and at all relevant times herein has conducted business in the Commonwealth of Kentucky and in Jefferson County, Kentucky.

5. Defendant, The Winter Construction Company ("Winter"), is registered as a foreign corporation with the Kentucky Secretary of State, with its principal office listed as being located in Atlanta, Georgia. Winter has a Kentucky registered agent for service of process, and at all relevant times herein has conducted business in the Commonwealth of Kentucky and in Jefferson County, Kentucky.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over this action under 28 U.S.C. § 1332 because this action is between corporations and companies that are citizens of different states and the amount in controversy exceeds $75,000.00, exclusive of interests and costs.

7. Venue is proper in this Court, pursuant to 28 U.S.C. § 1391(b)(2), because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

## FACTUAL ALLEGATIONS

8. In 2016, LG&E-KU Services Company, or one of its related entities ("LG&E"), retained the services of Wood to prepare a *limited* NESHAPs asbestos and other regulated materials survey related to the upcoming demolition of the Powerhouse and associated annex and office building at LG&E's Cane Run Generating Station located at 5252 Cane Run Road, Louisville, Kentucky 40204 (the "Demolition").

9. Wood's role in the Demolition was to oversee that the Demolition was performed to specifications that Wood had prepared for LG&E, as well as ensuring all work was performed in compliance with all local, state and federal laws. Wood also served as a consultant to advise LG&E on selecting a General Contractor ("GC") for the Demolition.

3

10. Brandenburg Industrial Service Company, an Illinois corporation ("Brandenburg"), and Griffin both submitted competing bids to LG&E for the GC position related to the Demolition.

11. In preparation of their respective competing bids to become the GC of the Demolition, Brandenburg and Griffin each solicited bids from various contractors for the asbestos abatement portion of the Demolition (the "Abatement").

12. In the spring of 2017, Griffin specifically reached out and contacted GreenCity and requested that GreenCity bid on the Abatement.

13. Prior to Griffin contacting GreenCity about the Abatement, GreenCity had no knowledge of the Demolition project.

14. When GreenCity was specifically requested by Griffin to submit a bid for the Abatement, Griffin made GreenCity an offer, to wit: In consideration of GreenCity providing the lowest and most competitive bid for the Abatement which met all of the specifications for the Demolition, GreenCity was expressly promised by Griffin that if Griffin was ultimately awarded the GC position, that GreenCity would be awarded the Abatement portion of the Demolition. Griffin solidified said promise by stating to GreenCity that "We are the type of company that if we take you to the dance, we are taking you home."

15. GreenCity agreed and accepted Griffin's offer and expended substantial resources and indeed submitted the lowest and most competitive bid for the Abatement to Griffin.

16. GreenCity submitted bids to both Brandenburg and Griffin for the Abatement portion of the Demolition.

4

17. GreenCity was specifically informed by Griffin that the Abatement was required to be performed and completed in less than one year's time from the date the Abatement work began.

18. GreenCity's May 8, 2017 bid to Griffin for the Abatement amounted to eleven million, seventy seven thousand, nine hundred thirty seven dollars and thirty five cents ($11,077,937.35).

19. Winter also submitted a bid to Griffin for the Abatement but said bid was not competitive to GreenCity's bid and was for a substantially higher sum of money.

20. In mid-2017, Griffin was ultimately awarded the GC position of the Demolition by LG&E and was selected for said position by LG&E over Brandenburg.

21. GreenCity was informed by Griffin that the amount of money contained in Griffin's winning bid to LG&E to become the GC incorporated GreenCity's more competitive Abatement bid into its winning bid with LG&E, which was substantially less than Winter's Abatement bid.

22. When Griffin was awarded the GC position of the Demolition, Griffin and GreenCity had a binding contract for GreenCity to perform the Abatement.

23. GreenCity incurred approximately twenty thousand dollars ($20,000.00) in costs related to preparing its Abatement bid.

24. GreenCity expected to realize a profit of approximately 40% to 50% of the amount of its Abatement bid due to the fact that the Demolition was to be performed locally by GreenCity, and GreenCity could maximize its profits due to the proximity of the Demolition related to GreenCity's local contacts, labor, materials, equipment and its principal office being located in the same proximity.

25. Wood unethically, improperly, maliciously, intentionally and in bad faith interfered in the Demolition bidding and GC selection process by specifically informing Griffin that although Griffin had been awarded the GC position by LG&E that Griffin was ordered and directed to use Winter for the Abatement over GreenCity.

26. Thereafter, Griffin falsely represented to GreenCity that although Griffin had been awarded the GC position, that LG&E had instructed Griffin that it had to use Winter for the Abatement, and that GreenCity would not get the job. At the time, GreenCity was provided no explanation other than the above as to exactly why LG&E had made such an instruction, or why Winter would be performing the Abatement versus GreenCity.

27. Griffin later informed GreenCity that it was not LG&E who instructed Griffin that it could not use GreenCity for the Abatement, as Griffin had originally falsely represented to GreenCity, but that it was actually Wood that had inexplicably intervened and ordered and directed Griffin that it must use Winter without any other explanation.

## Count I

## Breach of Contract (Against Griffin)

28. Paragraphs 1-27 above are incorporated herein by reference as if repeated herein.

29. GreenCity had no prior knowledge of the Demolition or the Abatement associated therewith prior to Griffin specifically contacting GreenCity with an offer.

30. Griffin made a verbal offer to GreenCity requesting GreenCity to bid on the Abatement, and if Griffin was ultimately awarded the GC position, and GreenCity's

6

Abatement bid was the lowest and most competitive Abatement bid Griffin received, that GreenCity would be awarded the Abatement portion of the Demolition.

31. GreenCity accepted Griffin's offer and a contract was formed (the "Contract").

32. GreenCity's performed its obligations under the Contract and GreenCity's Abatement bid was the lowest and most competitive bid that Griffin received related to the Abatement.

33. Griffin was awarded the GC position.

34. The Contract became enforceable between GreenCity and Griffin related to the Abatement when Griffin's Abatement bid was the lowest and most competitive Griffin had received and Griffin was awarded the GC position for the Demolition.

35. Griffin breached the Contract with GreenCity when it refused in bad faith, and without justification, to perform its obligations under the Contract with GreenCity, and retained Winter in place of GreenCity to perform the Abatement.

36. No justification or privilege excuses Griffin's breach of the Contract.

37. GreenCity is in possession of a recorded phone conversation which confirmed the existence of the Contract.

38. GreenCity has been damaged by Griffin's breach of the Contract and is entitled to be awarded damages therefore.

### Count II

### Tortious Interference With Contract (Against Wood and Winter)

39. Paragraphs 1-38 above are incorporated herein by reference as if repeated herein.

40. A Contract between GreenCity and Griffin existed, as described above.

41. Defendants Wood and Winter each had knowledge of the Contract.

42. Wood and Winter have a history of doing business with each other.

43. Defendants Wood and Winter specifically intended to cause of breach of the Contract between Griffin and GreenCity.

44. Despite knowledge of the Contract between Griffin and GreenCity, Wood and Winter unethically, improperly, maliciously and intentionally colluded and interfered in the Contract to circumvent GreenCity's rights in the Contract, to ensure that Griffin was ordered to make sure that Winter was awarded the Abatement rather than GreenCity, and such actions caused a breach of the Contract between Griffin and GreenCity.

45. GreenCity suffered damages as a result of Wood's and Winters' actions above in intentionally causing a breach of the Contract between Griffin and GreenCity.

46. No privilege or justification excuses Wood's and/or Winter's conduct described herein.

47. GreenCity has been damaged by the actions of Wood and Winter described above and is entitled to be awarded damages therefore, including punitive damages.

## Count III

### Tortious Interference With Prospective Business Advantage

### (Against Wood and Winter)

48. Paragraphs 1-47 above are incorporated herein by reference as if repeated herein.

49. GreenCity had a valid business relationship and/or expected business advantage with Griffin due to the fact that Griffin specifically reach out and contacted GreenCity and contracted with GreenCity that if Griffin was ultimately awarded the GC position, and GreenCity's Abatement bid was the lowest and most competitive Abatement bid it received (which it was), that GreenCity was to be awarded the Abatement portion of the Demolition by Griffin, and GreenCity agreed to said terms.

50. Wood and Winter had express knowledge of the valid business relationship and/or expected business advantage GreenCity had with Griffin.

51. Wood and Winter unethically, improperly, maliciously, and intentionally interfered in the valid business relationship and/or expected business advantage GreenCity had with Griffin.

52. Wood and Winter had improper motives which arose as a result of their long-standing close business relationship with each other in intentionally interfering in the valid business relationship and/or expected business advantage GreenCity had with Griffin.

53. Despite knowledge of the valid business relationship and/or expected business advantage GreenCity had with Griffin, Wood and Winter unethically, improperly, maliciously and intentionally colluded and interfered in the valid business relationship and/or expected business advantage GreenCity had with Griffin and such actions caused the destruction of the valid business relationship and/or expected business advantage GreenCity had with Griffin related to the Abatement.

54. No justification or privilege excuses Wood's and/or Winter's conduct described herein.

55. Wood's and Winter's conduct described herein was unethical, fraudulent, wanton, willful and oppressive and/or was made in bad faith and/or with malice towards GreenCity.

56. GreenCity has been damaged by the actions of Wood and Winter described above and is entitled to be awarded damages therefore, including compensatory and punitive damages.

## Count IV

### Promissory Estoppel (Against Griffin)

57. Paragraphs 1-56 above are incorporated herein by reference as if repeated herein.

58. Griffin made a clear promise and offer to GreenCity that if Griffin was ultimately awarded the GC position, and GreenCity's Abatement bid was the lowest and most competitive Abatement bid it received (which it was), that GreenCity was to be awarded the Abatement portion of the Demolition by Griffin.

59. Griffin reasonably expected to induce GreenCity into action and expend its time and resources and provide Griffin with the lowest and most competitive Abatement bid in reliance of Griffin's promise above.

60. GreenCity reasonably relied upon Griffin's promise and representations, and provided Griffin with the lowest and most competitive Abatement bid.

61. GreenCity reasonably relied on Griffin's promise and representations to its own detriment when Griffin reneged and refused to honor its promise and representations.

62. Justice may be achieved only by enforcement of the promise Griffin made to GreenCity as described herein so as to ensure that GreenCity is awarded damages representing the benefits it expected to obtain as a result of Griffin's promise and representations.

63. GreenCity has been damaged by the actions of Wood described above and is entitled to be awarded damages therefore.

## Count V

## Civil Conspiracy (Against Wood and Winter)

64. Paragraphs 1-63 above are incorporated herein by reference as if repeated herein.

65. Wood and Winter conspired with each other to intentionally and tortiously interfere in the Contract between Griffin and GreenCity, and/or tortiously interfere with the valid business relationship and/or expected business advantage GreenCity had with Griffin, by taking intentional and malicious steps to ensure that Griffin was ordered to make sure that Griffin awarded the Abatement to Winter despite their knowledge of the Contract and/or valid business relationship and/or expected business advantage GreenCity had with Griffin.

66. Wood's and Winter's tortious actions described above against GreenCity were taken in order to benefit themselves, and/or their agents and representatives, by committing unethical, fraudulent, wanton, willful and oppressive improper actions to deprive GreenCity of the Abatement, and ultimately making sure that Griffin was ordered and directed to award the Abatement to Winter, despite Wood and Winter both having

knowledge of the Contract and/or valid business relationship and/or expected business advantage GreenCity had with Griffin.

67. Wood's and Winter's actions described herein amounted to a corrupt or unlawful combination or agreement between two or more persons to do by concert of action an unlawful act, or to do a lawful act by unlawful means.

68. Wood and Winter acted in concert with each other pursuant to a common design and scheme and each gave substantial assistance to the other in accomplishing a conspiracy to award the Abatement to Winter, despite their knowledge of GreenCity's contractual rights and/or the valid business relationship and/or expected business advantage GreenCity had with Griffin.

69. GreenCity has been damaged by the actions of Wood and Winter described above and is entitled to be awarded damages therefore, including compensatory and punitive damages.

## Count VI

### Unjust Enrichment (Against Winter)

70. Paragraphs 1-69 above are incorporated herein by reference as if repeated herein.

71. As described throughout herein, Winter benefitted from being improperly awarded the Abatement at the expense of GreenCity, despite knowledge of Griffin's contractual rights and/or the valid business relationship and/or expected business advantage GreenCity had with Griffin.

72. There was a resulting appreciation of the benefit described above by Winter when it was awarded and performed the Abatement despite knowledge of

Griffin's contractual rights and/or the valid business relationship and/or expected business advantage GreenCity had with Griffin.

73. Winter inequitably retained the benefit it obtained, and was unjustly enriched, at the expense of GreenCity without payment for its value, when it was awarded and performed the Abatement despite knowledge of Griffin's contractual rights and/or the valid business relationship and/or expected business advantage GreenCity had with Griffin.

74. GreenCity has been damaged by the actions of Winter described above which amounted to unjust enrichment and is entitled to be awarded damages therefore.

**WHEREFORE,** Plaintiff, GreenCity Demo, LLC, respectfully demands, as follows:

1. A trial by jury;
2. Compensatory and punitive damages to be determined by the trier of fact;
3. Pre-judgment and post-judgment interest on all sums awarded as allowable at the maximum rate permitted by law;
4. Attorney fees, costs and expenses as permitted by law;
5. Leave to amend this Complaint to add parties and/or claims as the evidence may warrant; and
6. Any and all such other and further equitable relief or otherwise to which Plaintiff may be entitled.

Respectfully submitted,

*/s/ James D. Ballinger*
James D. Ballinger
**BALLINGER LAW, PLLC**
3610 Lexington Road
Louisville, KY  40207
(502) 426-3215
jim@kentuckytrial.com
*Counsel for Plaintiff, GreenCity Demo, LLC*