UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:19-CV-146-RGJ

GREENCITY DEMO, LLC                                                                                                Plaintiff

v.

WOOD ENVIRONMENT &                                                     Defendants
INFRASTRUCTURE SOLUTIONS,
INC., ET AL.

\* \* \* \* \*

## MEMORANDUM OPINION AND ORDER

Defendant Wood Environment & Infrastructure Solutions ("Wood") and Defendant Winter Construction Company ("Winter") move to dismiss Plaintiff GreenCity Demo's ("GreenCity") Second Amended Complaint. [DE 39; DE 41]. Briefing is complete and the matter is ripe. [DE 48; DE 49; DE 50]. For the reasons below, Wood's Motion to Dismiss [DE 39] is **DENIED** as to both Defendants and Winter's Joinder in Wood's Motion to Dismiss [DE 41] is **GRANTED**.

### I.     BACKGROUND

In 2016, LG&E-KU Services Company ("LG&E") hired Wood to oversee the demolition of an LG&E powerplant and to help LG&E select a general contractor for the project. [DE 29-2 at 190]. Griffin, a general contractor, wanted the job. *Id.* at 191. Before Griffin applied, it contacted GreenCity, a subcontractor, and asked GreenCity to submit a bid for the abatement portion of the demolition. *Id.* According to GreenCity, Griffin did much more than just request a bid:

> In consideration of GreenCity providing the lowest and most competitive bid for the Abatement which met all of the specifications for the Demolition, GreenCity was expressly promised by Griffin that if Griffin was ultimately awarded the GC position, that GreenCity would be awarded the Abatement portion of the

1

>Demolition. Griffin solidified said promise by stating to GreenCity that 'We are the type of company that if we take you to the dance, we are taking you home.'

*Id.*

GreenCity accepted Griffin's offer and "expended substantial resources and indeed submitted the lowest and most competitive bid for the Abatement to Griffin." *Id.* Winter, another subcontractor, also submitted a bid to Griffin, but its bid was higher than and not competitive with GreenCity's. *Id.* at 192.

LG&E hired Griffin as the general contractor. *Id.* Subsequently, Griffin informed GreenCity "that the amount of money contained in Griffin's winning bid to LG&E to become the GC incorporated GreenCity's more competitive Abatement bid into its winning bid with LG&E." *Id.* Although Griffin and GreenCity allegedly had an oral contract, Wood "ordered and directed" Griffin "to use Winter for the Abatement over GreenCity." *Id.* at 193.

GreenCity filed this action against Griffin, Winter, and Wood. [DE 1]. Griffin and Wood answered [DE 7; DE 8], and GreenCity filed its First Amended Complaint [DE 19]. Griffin and Winter then moved to dismiss the First Amended Complaint. [DE 23; 24]. GreenCity responded and moved for leave to amend. [DE 27; DE 28; DE 29]. Griffin objected to amendment, arguing that it is futile. [DE 32]. The Court granted GreenCity leave to amend, and denied as moot Griffin's motion to dismiss and Winter's motion to dismiss. [DE 36]. Wood moved to dismiss GreenCity's Second Amended Complaint, and Winter moved to join Wood's motion. [DE 39; DE 41].

## II. STANDARD

Federal Rule of Civil Procedure 12(b)(6) instructs that a court must dismiss a complaint if the complaint "fail[s] to state a claim upon which relief can be granted[.]" Fed. R. Civ. P. 12(b)(6). To state a claim, a complaint must contain "a short and plain statement of the claim showing that

the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). When considering a motion to dismiss, courts must presume all factual allegations in the complaint to be true and make all reasonable inferences in favor of the non-moving party. *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008) (citation omitted). "But the district court need not accept a bare assertion of legal conclusions." *Tackett v. M & G Polymers*, *USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citation omitted). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted).

To survive a motion to dismiss, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). "A complaint will be dismissed . . . if no law supports the claims made, if the facts alleged are insufficient to state a claim, or if the face of the complaint presents an insurmountable bar to relief." *Southfield Educ. Ass'n v. Southfield Bd. of Educ.*, 570 F. App'x 485, 487 (6th Cir. 2014) (citing *Twombly*, 550 U.S. at 561–64).

## III.   DISCUSSION

In its Second Amended Complaint, GreenCity asserts claims of tortious interference with contract (Count II), tortious interference with prospective business advantage (Count III), and civil conspiracy against Wood and Winter (Count V). [DE 37 at 250-55].

**A.   Claims Against Wood and Winter**

   1. Tortious Interference With Contract (Count II)

GreenCity asserts a claim against Wood and Winter for tortious interference with contract. *Id.* at 251-53.  To state a claim for  tortious interference with contract, a plaintiff must plead "(1) the existence of a contract; (2) [the defendant's] knowledge of the contract; (3) that [the defendant] intended to cause a breach of that contract; (4) that [the defendant's] actions did indeed cause a breach; (5) that damages resulted to [the plaintiff]; and (6) that [the defendant] had no privilege or justification to excuse its conduct."  *Snow Pallet, Inc. v. Monticello Banking Co.*, 367 S.W.3d 1, 5–6 (Ky. App. 2012)  (citing *Ventas, Inc. v. Health Care Prop. Inv'rs, Inc.*, 635 F. Supp. 2d 612, 619 (W.D. Ky. 2009), *aff'd sub nom. Ventas, Inc. v. HCP, Inc.*, 647 F.3d 291 (6th Cir. 2011)).

Citing *Finney Co. v. Monarch Constr. Co.,* 670 S.W.2d 857, 859 (Ky. 1984),  Wood argues that GreenCity has failed to state a claim for tortious interference with a contract because it has not plausibly alleged the existence of a contract.  [DE 39-1 at 275-77].  Winter concurs, arguing that "GreenCity's claim . . . should be dismissed because the second amended complaint fails to demonstrate the formation of a contract or even a preliminary agreement between GreenCity and Griffin."  [DE 49 at 329].  GreenCity counters:  "Here, the facts as alleged presume a contract exists . . . Greencity alleges a colorable claim for tortious interference with contract and prays the Court will allow discovery to further support its position."   [DE 48 at 322].

In *Finney*, the Kentucky Supreme Court held:

> A subcontractor bidder merely makes an offer that is converted into a contract by a regularly communicated acceptance conveyed to him by the general contractor.  No contractual relationship is created between the subcontractor and the general contractor even though the bid is used as a part of the general over-all bid by the general contractor and accepted by the awarding authority.

*Finney*, 670 S.W.2d at 860 (quoting *Klose v. Sequoia Union High Sch. District*, 11 Cal.App.2d 636, 258 P.2d 517-518 (1953)  (internal quotation marks omitted)).

4

But, the *Finney* court also suggested that there were possible exceptions to the general rule that a bid does not create a contract, such as "a series of communications between the parties which indicated an acceptance or agreement" or "reliance by the subcontractor upon the contractor." *Finney*, 670 S.W.2d at 860. GreenCity has sufficiently alleged "a series of communications . . . which indicated acceptance or agreement" (*i.e.*, the existence of a contract), breach, and damages:

> 29. GreenCity had no prior knowledge of the Demolition or the Abatement associated therewith prior to Griffin specifically contacting GreenCity with an offer.
>
> 30. Griffin made a verbal offer to GreenCity requesting GreenCity to bid on the Abatement, and if Griffin was ultimately awarded the GC position, and GreenCity's Abatement bid was the lowest and most competitive Abatement bid Griffin received, that GreenCity would be awarded the Abatement portion of the Demolition.
>
> 31. GreenCity accepted Griffin's offer and a contract was formed (the "Contract").
>
> 32. GreenCity's performed its obligations under the Contract and GreenCity's Abatement bid was the lowest and most competitive bid that Griffin received related to the Abatement.
>
> 33. Griffin was awarded the GC position.
>
> 34. The Contract became enforceable between GreenCity and Griffin related to the Abatement when Griffin's Abatement bid was the lowest and most competitive Griffin had received and Griffin was awarded the GC position for the Demolition.

[DE 37 at 249-50].

GreenCity has also sufficiently alleged the remaining elements of a claim for tortious interference with a contract:

> 39. Paragraphs 1-38 above are incorporated herein by reference as if repeated herein.
>
> 40. A Contract between GreenCity and Griffin existed, as described above.
>
> 41. Defendants Wood and Winter each had knowledge of the Contract.
>
> 42. Wood and Winter have a history of doing business with each other.

5

> 43. Defendants Wood and Winter specifically intended to cause of breach of the Contract between Griffin and GreenCity.
>
> 44. Despite knowledge of the Contract between Griffin and GreenCity, Wood and Winter unethically, improperly, maliciously and intentionally colluded and interfered in the Contract to circumvent GreenCity's rights in the Contract, to ensure that Griffin was ordered to make sure that Winter was awarded the Abatement rather than GreenCity, and such actions caused a breach of the Contract between Griffin and GreenCity.
>
> 45. GreenCity suffered damages as a result of Wood's and Winters' actions above in intentionally causing a breach of the Contract between Griffin and GreenCity.
>
> 46. No privilege or justification excuses Wood's and/or Winter's conduct described herein.
>
> 47. GreenCity has been damaged by the actions of Wood and Winter described above and is entitled to be awarded damages therefore, including punitive damages.

*Id.* at 250-51.

GreenCity has alleged that Wood and Winter were aware of the contract, intended to breach it, and did so. *Id.* at 251. Wood's and Winter's intent to interfere in the contract can be inferred from their pre-existing business relationship and the allegation that Wood "ordered and directed" Griffin "to use Winter for the Abatement over GreenCity." *Id.* GreenCity has alleged that their actions resulted in it not getting the job. *Id.* Finally, GreenCity has alleged that Wood and Winter had no privilege or justification for causing the breach. *Id.* GreenCity's allegations are sufficient to state a claim for tortious interference with a contract. As a result, the Court denies Wood's motion and Winter's motion as to this claim.

2. <u>Tortious Interference with Prospective Business Advantage (Count III)</u>

GreenCity asserts a claim against Wood and Winter for tortious interference with prospective business relations. [DE 37 at 251-53]. To state a claim for tortious interference with prospective business relations, a plaintiff must plead "(1) the existence of a valid business

6

relationship or expectancy; (2) that [the defendant] was aware of this relationship or expectancy; (3) that [the defendant] intentionally interfered; (4) that the motive behind the interference was improper; (5) causation; and (6) special damages." *Snow Pallet, Inc.*, 367 S.W.3d at 6 (citing *Monumental Life Ins. Co. v. Nationwide Ret. Sols., Inc.*, 242 F. Supp. 2d 438, 450 (W.D. Ky. 2003)).

A party can act with malice in the absence of "ill will"; indeed, "malice may be inferred in an interference action by proof of lack of justification." *Nat'l Collegiate Athletic Ass'n By & Through Bellarmine Coll. v. Hornung*, 754 S.W.2d 855, 859 (Ky. 1988) (citing *Smith Dev. Corp. v. Bilow Enter., Inc.*, 308 A.2d 477 (R.I. 1973); Restatement (Second) of Torts § 766 cmt. s ("[T]he context and the course of the decisions make it clear that what is meant is not malice in the sense of ill will but merely 'intentional interference without justification.'")). "[T]he real question is whether the actor's conduct was fair and reasonable under the circumstances." *Ventas*, 635 F. Supp. 2d at 622 (quoting Restatement (Second) of Torts § 767 cmt. j.) (internal quotation marks omitted).

Wood argues that GreenCity has not sufficiently stated this claim because "has not made a factual assertion that, if assumed to be true, would demonstrate Wood's alleged malicious intent. Plaintiff has not alleged what, if anything, Wood stood to gain by Winter performing the subject work, much less the requisite malicious intent." [DE 39-1 at 278]. Winter echoes Wood, arguing that GreenCity has failed to sufficiently allege malice or lack of justification. [DE 49 at 331-33]. GreenCity asserts that "if the allegations contained within the Second Amended Complaint are, as required, accepted as true for this analysis, the Court may infer the element of malice." [DE 48 at 324]. GreenCity further asserts that it "possesses an audio recording of a representative from

7

Griffin that acknowledges interference into its promise to Greencity by representatives of Wood and Winter." *Id.* In support of this claim, GreenCity alleges:

> 48. Paragraphs 1-47 above are incorporated herein by reference as if repeated herein.
>
> 49. GreenCity had a valid business relationship and/or expected business advantage with Griffin due to the fact that Griffin specifically reach out and contacted GreenCity and contracted with GreenCity that if Griffin was ultimately awarded the GC position, and GreenCity's Abatement bid was the lowest and most competitive Abatement bid it received (which it was), that GreenCity was to be awarded the Abatement portion of the Demolition by Griffin, and GreenCity agreed to said terms.
>
> 50. Wood and Winter had express knowledge of the valid business relationship and/or expected business advantage GreenCity had with Griffin.
>
> 51. Wood and Winter unethically, improperly, maliciously, and intentionally interfered in the valid business relationship and/or expected business advantage GreenCity had with Griffin.
>
> 52. Wood and Winter had improper motives which arose as a result of their long-standing close business relationship with each other in intentionally interfering in the valid business relationship and/or expected business advantage GreenCity had with Griffin.
>
> 53. Despite knowledge of the valid business relationship and/or expected business advantage GreenCity had with Griffin, Wood and Winter unethically, improperly, maliciously and intentionally colluded and interfered in the valid business relationship and/or expected business advantage GreenCity had with Griffin and such actions caused the destruction of the valid business relationship and/or expected business advantage GreenCity had with Griffin related to the Abatement.
>
> 54. No justification or privilege excuses Wood's and/or Winter's conduct described herein.
>
> 55. Wood's and Winter's conduct described herein was unethical, fraudulent, wanton, willful and oppressive and/or was made in bad faith and/or with malice towards GreenCity.
>
> 56. GreenCity has been damaged by the actions of Wood and Winter described above and is entitled to be awarded damages therefore, including compensatory and punitive damages.

[DE 37 at 251-53].

GreenCity has sufficiently stated a claim for tortious interference with prospective business advantage. Wood and Winter do not appear to contest whether GreenCity has plausibly alleged the first three elements of this claim—that is, that the expectancy existed, that they were aware of it, and that they intentionally interfered. Rather, they dispute whether GreenCity has plausibly alleged that they had an improper motive for doing so. GreenCity has alleged that its expectancy was based on Griffin's promise that it would be "awarded the Abatement portion of the Demolition" if it provided "the lowest and most competitive bid for the Abatement which met all of the specifications for the Demolition." [DE 37 at 247]. GreenCity has alleged that Wood and Winter "had knowledge" of its expectancy. *Id.* at 252. And GreenCity has further alleged that Wood and Winter "unethically, improperly, maliciously, and intentionally interfered" in its expectancy. *Id.* Green City has expressly alleged malice. *Id.* In addition, these allegations, when considered alongside GreenCity's assertion that Wood "ordered and directed" Griffin "to use Winter for the Abatement over GreenCity"—despite Winter submitting a higher and less competitive bid—allow for a reasonable inference that Wood and Winter unfairly and unreasonably interfered in GreenCity's prospective business advantage. *See Ventas*, 635 F. Supp. 2d at 621; *see also MSD Energy, Inc. v. Gognat*, 507 F. Supp. 2d 764, 776 (W.D. Ky. 2007) ("[T]he Complaint alleges that the *lis pendens* notice was filed 'wrongfully and maliciously [to] create[ ] a cloud upon Plaintiffs' title to the various oil and gas rights and interests owned and possessed by Plaintiffs in western Kentucky.' This presents and issue of fact as to whether Timothy's interference was 'improper' and the Court cannot dismiss the claim at this time"). As a result, the Court denies Wood's motion and Winter's motion as to this claim.

3. <u>Civil Conspiracy (Count V)</u>

GreenCity asserts a claim against Wood and Winter for civil conspiracy. [DE 37 at 254-55]. A claim for civil conspiracy requires "a corrupt or unlawful combination or agreement between two or more persons to do by concert of action an unlawful act, or to do a lawful act by unlawful means." *Peoples Bank of N. Ky., Inc. v. Crowe Chizek & Co. LLC,* 277 S.W.3d 255, 261 (Ky.Ct.App.2008) (quoting *Smith v. Bd. of Educ. Of Ludlow,* 94 S.W.2d 321, 325 (Ky.1936)) (internal quotation marks omitted). "[T]he elements of a civil conspiracy are: 1) an agreement or combination, 2) that is unlawful or corrupt, 3) entered into by two or more persons, 4) for the purpose of accomplishing an unlawful goal." *Brown v. Student Loan Xpress, Inc.*, No. 5:11-CV-00090-TBR, 2012 WL 1029467, at *9 (W.D. Ky. Mar. 26, 2012).

Wood argues that "GreenCity cannot maintain its civil conspiracy claim against Winter because its underlying tort claims fail as a matter of law. GreenCity's civil conspiracy claim is dependent on its tortious interference claims." [DE 39-1 at 281]. Winter agrees. [DE 49 at 333-34]. But, because the Court has not dismissed the tortious interference claims, the Court declines to dismiss the civil conspiracy claim based on this argument.

Wood further argues that GreenCity "fails to plead civil conspiracy with specificity because its allegations are conclusory and unsupported by fact." [DE 39-1 at 279].

In support of this claim, GreenCity alleges:

65. Wood and Winter conspired with each other to intentionally and tortuously interfere in the Contract between Griffin and GreenCity, and/or tortiously interfere with the valid business relationship and/or expected business advantage GreenCity had with Griffin, by taking intentional and malicious steps to ensure that Griffin was ordered to make sure that Griffin awarded the Abatement to Winter despite their knowledge of the Contract and/or valid business relationship and/or expected business advantage GreenCity had with Griffin.

66. Wood's and Winter's tortious actions described above against GreenCity were taken in order to benefit themselves, and/or their agents and representatives, by

committing unethical, fraudulent, wanton, willful and oppressive improper actions to deprive GreenCity of the Abatement, and ultimately making sure that Griffin was ordered and directed to award the Abatement to Winter, despite Wood and Winter both having knowledge of the Contract and/or valid business relationship and/or expected business advantage GreenCity had with Griffin.

67. Wood's and Winter's actions described herein amounted to a corrupt or unlawful combination or agreement between two or more persons to do by concert of action an unlawful act, or to do a lawful act by unlawful means.

68. Wood and Winter acted in concert with each other pursuant to a common design and scheme and each gave substantial assistance to the other in accomplishing a conspiracy to award the Abatement to Winter, despite their knowledge of GreenCity's contractual rights and/or the valid business relationship and/or expected business advantage GreenCity had with Griffin.

69. GreenCity has been damaged by the actions of Wood and Winter described above and is entitled to be awarded damages therefore, including compensatory and punitive damages.

[DE 37 at 254-55].

Considering GreenCity's factual allegations as true, which the Court must do at this stage of litigation, the Court finds that GreenCity has provided enough allegations to "nudge[] [its] claim[] across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. GreenCity's allegations may be insufficient after discovery. But, at this stage of litigation, GreenCity has alleged just enough for its civil conspiracy to survive.

### IV.   CONCLUSION

For the reasons above, and being otherwise sufficiently advised, **THE COURT ORDERS AS FOLLOWS**:

1) Wood's Motion to Dismiss [DE 39] is **DENIED as to both Defendants.**

2) Winter's Joinder in Wood's Motion to Dismiss [DE 41] is **GRANTED.**

Copies to: Counsel of record

12